544 S.E.2d 65

**STATE of West Virginia ex rel. Anita D. BROWN, Executrix of the Estate of Dixie D. Kilham, Petitioner,**

**Paul L. Ashbaugh, Intervenor,**

v.

**The CORPORATION OF BOLIVAR, A West Virginia Municipality, Respondent.**

No. 27913.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 28, 2000.

Decided Dec. 12, 2000.

F. Samuel Byrer, Esq., Nichols and Skinner, Charles Town, for Petitioner.

Richard G. Gay, Esq., Berkeley Springs, for Intervenor.

Charles B. Howard, Esq., Charles Town, for Respondent.

PER CURIAM.

This case is before this Court upon a petition for a writ of prohibition and/or writ of mandamus filed by the petitioner, Anita D. Brown, executrix of the Estate of Dixie D. Kilham, deceased, against the respondent, the Corporation of Bolivar, a municipality located in Jefferson County, West Virginia

(hereinafter "Bolivar"). Ms. Brown claims that Bolivar unlawfully passed a resolution on December 7, 1999, adopting a nine-month moratorium on the issuance of any building permits, both residential and commercial. Ms. Brown requests that Bolivar be ordered to issue building permits under the ordinance that was in effect prior to the moratorium and that Bolivar be prohibited from adopting similar moratoriums in the future. She also requests that she be awarded reasonable attorney fees and costs for this matter. We issued a rule to show cause, and now, for the reasons set forth below, grant the writ as moulded and remand this case to the Circuit Court of Jefferson County.

## I.

Dixie D. Kilham died on August 15, 1998, and the petitioner, Ms. Brown, was qualified as executrix of his estate on August 24, 1998. At the time of his death, Mr. Kilham owned a considerable amount of real estate in Jefferson County, West Virginia, and in the state of Maryland. Several parcels of the real estate in Jefferson County were located in the town of Bolivar. At the time of Mr. Kilham's death, his property in Bolivar was appraised at approximately $800,000.00.

In administering the estate, Ms. Brown negotiated a settlement agreement with the Internal Revenue Service (hereinafter "the IRS") with regard to the federal estate tax liability. The agreement between the estate and the IRS provided that the estate would pay the IRS fifty-five percent of the value of each piece of property as appraised, including the real estate located in Bolivar. Ms. Brown paid the corresponding West Virginia tax liability which was approximately $675,000.00.

Thereafter, Ms. Brown proceeded to market the real estate located in Bolivar so that she could discharge the estate's obligation to the IRS. At the same time, the Bolivar town council passed a resolution adopting a nine-month moratorium on the issuance of any building permits applied for in the town, both residential and commercial. The stated purpose of the moratorium was to study and evaluate the building and zoning ordinance of Bolivar.

Ms. Brown attended the second reading of the resolution adopting the moratorium and argued that the moratorium was void and would interfere with the sale of the estate's property and her fiduciary duties. Nonetheless, the town council of Bolivar adopted the moratorium on December 7, 1999.

Ms. Brown filed this petition for a writ of prohibition and/or writ of mandamus on July 7, 2000. That same day, the town council of Bolivar passed a new Planning and Zoning Ordinance thereby ending the moratorium. The new ordinance now governs the application process for residential and commercial building permits.

On September 29, 2000, this Court granted a motion to intervene filed by Paul L. Ashbaugh. Mr. Ashbaugh also owns property in Bolivar. He purchased the property for the purpose of constructing a housing development. Mr. Ashbaugh claims that under the prior ordinance, he would have been permitted to divide his property into twenty-five lots. Pursuant to the new ordinance adopted by Bolivar on July 7, 2000, Mr. Ashbaugh will only be able to construct a subdivision with nine lots. Mr. Ashbaugh also claims the moratorium adopted on December 7, 1999, was unlawful.

## II.

We begin by noting that generally "[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for [a petition for appeal] or certiorari." Syllabus Point 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953). However, this Court has also held that,

"The writ of prohibition lies from a superior court not only to inferior judicial tribunals properly and technically so denominated but also to inferior ministerial tribunals possessing incidentally judicial powers, such as are known in the law as quasi judicial tribunals, and even in extreme cases to purely ministerial bodies, when they attempt to usurp judicial functions." Point 1 Syllabus, *Fleming v.*

*Commissioners,* 31 W.Va. 608 [8 S.E. 267].

Syllabus Point 1, *State ex rel. City of Huntington v. Lombardo,* 149 W.Va. 671, 143 S.E.2d 535 (1965). By contrast, "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969).

■ Both Ms. Brown and Mr. Ashbaugh claim that the moratorium adopted by Bolivar on December 7, 1999, is unlawful pursuant to this Court's decision in *Bittinger v. Corporation of Bolivar,* 183 W.Va. 310, 395 S.E.2d 554 (1990). We agree. *Bittinger* also involved the town of Bolivar and a similar moratorium on the issuance of building permits.

In *Bittinger,* Bolivar adopted a resolution which placed a ninety-day moratorium on the issuance of all building permits. The moratorium was later extended for an additional sixty days, during which the town council adopted a new ordinance establishing a review process for construction within Bolivar. The council specified certain requirements that had to be met in order to apply for and receive a building permit.

As a result of the moratorium, Steven Bittinger and Douglas Alexander, d/b/a Cornerstone Properties, were denied twenty building permits for a subdivision they were in the process of developing. Prior to the moratorium, Cornerstone Properties had obtained twelve building permits for the subdivision. Bittinger and Alexander filed a petition for a writ of mandamus in the Circuit Court of Jefferson County requesting that Bolivar be ordered to issue the building permits. Ultimately, the circuit court denied the writ of mandamus and upheld the new ordinance. Thereafter, the petitioners filed an appeal with this Court.

■ After reviewing the record, the new ordinance in question, and the applicable case law, this Court concluded that there is "no authority which would permit a town council to impose a blanket moratorium on a valid ordinance." *Bittinger,* 183 W.Va. at 314, 395 S.E.2d at 558. Except for emergency situations as set forth in W.Va.Code § 8–11–4(c) (1969), "[g]enerally, the requirements of an ordinance governing procedure for the adoption of another ordinance cannot be waived, suspended or repealed by motion." *Id., quoting Hukle v. City of Huntington,* 134 W.Va. 249, 255–56, 58 S.E.2d 780, 784 (1950). As this Court further explained,

> "the ordinance of a municipal corporation may not be repealed by mere motion or resolution, nor can the operation of the ordinance be suspended by a resolution or by the acts of municipal officers .... A suspension, to be effective.... [must be] by an instrument of equal dignity, i.e. an ordinance."

*Id.* Accordingly, this Court held in Syllabus Point 3 of *Bittinger* that "[i]n order to suspend the operation of an ordinance, the ordinance must be repealed or succeeded by another ordinance or an instrument of equal dignity."

Despite this Court's decision in *Bittinger,* the town council of Bolivar has once again declared a moratorium on a valid ordinance. This moratorium which was intended to last for nine months ended on July 7, 2000, seven months after it began, when the town council enacted a new ordinance. Undoubtedly, this action was prompted by the filing of the petition for a writ of prohibition and/or mandamus by Ms. Brown. Contrary to the assertions made by Bolivar in its brief filed with this Court on July 17, 2000, the enactment of the new ordinance on July 7, 2000, did not render this case moot. The town of Bolivar clearly exercised a power it did not possess when it adopted the moratorium on December 7, 1999. Therefore, we find that the moratorium is void as a matter of law and once again instruct the town of Bolivar that it may not suspend the operation of a valid ordinance by adopting a blanket moratorium.

■ Having found that the December 7, 1999 moratorium is void, we must now determine the appropriate remedy for Ms. Brown and Mr. Ashbaugh. Clearly under *Bittinger,*

Ms. Brown, Mr. Ashbaugh, or any other applicant is entitled to have any applications for building permits which were submitted within the moratorium period considered under the ordinance existing at the time and granted, if the ordinance as written would permit. *Bittinger,* 183 W.Va. at 315, 395 S.E.2d at 559. However, based upon Ms. Brown's petition, it does not appear that she requested a building permit during the moratorium. As noted above, Ms. Brown was attempting to sell the estate's property in order to discharge the estate's obligation to the IRS. Ms. Brown claims that the moratorium interfered with her ability to market the real estate.

The facts of this case are similar to those in *Carter v. City of Salina,* 773 F.2d 251 (10th Cir.1985). *Carter* involved certain property located in Salina, Utah, which was purchased by Thomas and Mary Carter in 1963. At the time the Carters bought the property, Salina was unzoned. In 1981, the Carters sought to sell their property and attempted to list the property as commercial real estate to attract a higher sales price. At that time, the Carters learned that Salina had enacted a zoning ordinance in 1973, and that their property was now classified as residential.

In early 1982, a potential purchaser offered the Carters $90,000.00 for the property on the condition that it be rezoned from residential to commercial. The purchaser intended to operate a restaurant upon the property. However, the city denied the request to rezone the property, and the offer to purchase the property was withdrawn. Subsequently, the Carters filed a lawsuit against Salina seeking monetary relief in the amount of $90,000.00 plus interest, and an order setting aside the 1973 zoning ordinance or alternatively, an order requiring the City to change the zoning classification of the property to commercial.

It was undisputed that the 1973 ordinance adopted by Salina was void for failure to comply with the mandatory, jurisdictional notice requirements of the Utah statute. As a direct result of the void zoning ordinance, the Carters suffered financial hardship including loss of sale, costs, and attorney fees. Given these facts and circumstances, the Court of Appeals concluded that equitable considerations dictated that the City be enjoined from interfering with the Carters' use of their property for commercial purposes even though the City had later enacted a valid zoning ordinance in 1984. The court explained that:

> If the zoning ordinance is void for want of the procedural safeguards of notice and hearing, etc., the properties intended to be affected thereby are unzoned and the property owners may proceed with any other lawfully intended use. In such cases, the court is limited to the remedy of declaring the zoning ordinance void and finding that the property owner affected is entitled to use his property for any lawful purpose without regard to the void zoning ordinance.

773 F.2d at 255. In other words, at the time the Carters sought to sell their property, it remained unzoned because the 1973 ordinance was invalid. In addition, Utah had declared that zoning ordinances do not operate retrospectively against existing nonconforming buildings or uses where vested rights are concerned. Accordingly, the court found that because the Carters had never relinquished their intention to use their property for a restaurant or other similar use, they were entitled to injunctive relief against the City permitting them to use or sell their property in the City for a restaurant or other similar use.

In this case, Ms. Brown was seeking to sell the estate's property when the moratorium was adopted. By instituting the illegal moratorium, Bolivar effectively voided the existing zoning ordinance. Despite Ms. Brown's objections, Bolivar, by adopting the illegal moratorium, essentially prevented her from selling or developing the estate's property because no potential purchaser was able to acquire a building permit. Moreover, while the moratorium was still in place, Bolivar adopted a new zoning ordinance further limiting Ms. Brown's ability to sell the property as any potential purchaser would now have to seek a building permit under a less favorable zoning ordinance. Given these circumstances and

the fact that West Virginia has also exempted preexisting, nonconforming uses of land from compliance with subsequently enacted planning and zoning ordinances,[1] we find that equitable considerations dictate that Ms. Brown and her immediate purchasers and/or her immediate successors in title to the estate's property are entitled to develop and use the property for any lawful purpose as they might have done prior to the void moratorium and the now repealed zoning ordinance. Likewise, Mr. Ashbaugh was also effectively prevented from developing his property while the moratorium was in place, and he is also entitled to continue to develop his property without regard to the current zoning ordinance, as he might have done prior to the void moratorium and the now repealed zoning ordinance.

■ Finally, Ms. Brown and Mr. Ashbaugh contend that they are entitled to attorney fees and costs for this matter. In Syllabus Point 1 of *State ex rel. Highlands Conservancy, Inc. v. West Virginia Div. of Environmental Protection*, 193 W.Va. 650, 458 S.E.2d 88 (1995), this Court held that "[c]osts and attorney's fees may be awarded in mandamus proceedings involving public officials because citizens should not have to resort to lawsuits to force government officials to perform their legally prescribed nondiscretionary duties." This Court further held in Syllabus Points 2 and 3, respectively, of *Highlands Conservancy:*

> Attorney's fees may be awarded to a prevailing petitioner in a mandamus action in two general contexts: (1) where a public official has deliberately and knowingly refused to exercise a clear legal duty, and (2) where a public official has failed to exercise a clear legal duty, although the failure was not the result of a decision to knowingly disregard a legal command. Where a public official has deliberately and knowingly refused to exercise a clear legal duty, a presumption exists in favor of an award of attorney's fees; unless extraordinary circumstances indicate an award would be inappropriate, attorney's fees will be allowed.

In this case, the town of Bolivar ignored a clear directive of this Court and refused to exercise a clear legal duty by adopting an unlawful moratorium instead of repealing the ordinance or enacting a new ordinance or instrument of equal dignity. Accordingly, we find that an award of attorney fees and costs is justified. Therefore, the writ is granted as moulded, and this case is remanded to the Circuit Court of Jefferson County for the sole purpose of determining the proper amount of attorney fees and costs.

Writ granted as moulded and remanded.

---

1. W.Va.Code § 8–24–50 (1984) provides:

   Such zoning ordinance or ordinances shall not prohibit the continuance of the use of any land, building or structure for the purpose for which such land, building or structure is used at the time such ordinance or ordinances take effect, but any alteration or addition to any land or any alteration, addition or replacement of or to any existing building or structure for the purpose of carrying on any use prohibited under the zoning rules and regulations applicable to the district may be prohibited: Provided, That no such prohibition shall apply to alterations or additions to or replacement of buildings or structures by any farm, industry or manufacturer, or to the use of land presently owned by any farm, industry or manufacturer but not used for agricultural, industrial or manufacturing purposes, or to the use or acquisition of additional land which may be required for the protection, continuing development or expansion of any agricultural, industrial or manufacturing operation or any present or future satellite agricultural, industrial or manufacturing use. If a nonconforming use has been abandoned, any future use of such land, building or structure shall be in conformity with the provisions of the ordinance regulating the use in the district in which such land, building or structure may be located: Provided, however, That abandonment of any particular agricultural, industrial or manufacturing process, shall not be construed as abandonment of agricultural, industrial or manufacturing use.