614 S.E.2d 719

STATE of West Virginia ex rel. Anita D. BROWN, Executrix of the Estate of Dixie D. Kilham, and Paul L. Ashbaugh, Petitioners

v.

THE CORPORATION OF BOLIVAR, a West Virginia Municipality; Timothy Collins, Mayor, Individually and in His Official Capacity; Mary Rutherford, Individually and in Her Official Capacity; Robert Stewart, in His Official Capacity; John Heafer, in His Official Capacity; Robert Hardy, in His Official Capacity; and Clark Draper, III, in His Official Capacity, Respondents.

John R. Fletcher, Chanda Wright, Don Owen, Amy Owen, Jeffrey A. Aberle, Joe Rouch, Scott L. Butts, Michael Lakey and Jeanette Lakey, Intervenors.

No. 32532.

Supreme Court of Appeals of West Virginia.

Submitted April 26, 2005.

Decided May 26, 2005.

---

Richard G. Gay, Nathan P. Cochran, R. Greg Garretson, Law Office of Richard G. Gay, Berkeley Springs, Peter L. Chakmakian, Charles Town, for the Petitioners.

David M. Hammer, Hammer, Ferretti, Schiavoni, Martinsburg, for the Respondents.

Lauren Clingan, Shepherdstown, for the Intervenors.

PER CURIAM.

Petitioners Anita D. Brown[1] and Paul L. Ashbaugh[2] seek a writ of mandamus to compel the Town Council of Bolivar ("Town Council") to approve a plat depicting a planned subdivision known as Marmion Hill and to order the Town Council to issue all building permits required in connection with the development of the subdivision. In addition, Petitioners seek attorney's fees and costs related to the filing of this petition. In explanation of its refusal to approve the submitted plat, the Town Council cited concerns regarding the safety of residents, particularly children, based on the identified traffic pat-

---

1. Ms. Brown is the executrix of the estate of Dixie D. Kilham and the seller of the property on which the planned subdivision at the center of this dispute is to be built.

2. Mr. Ashbaugh is a real estate developer and the buyer of the property upon which the planned subdivision is to be built.

terns submitted with the proposed subdivision plat. Upon our studied review of this matter, we issue a writ of mandamus to require the Town Council to approve the submitted plat of the Marmion Hill subdivision. As to the additional issues of requiring the Town Council to approve all required building permits and attorney's fees, we do not grant Petitioners' request for extraordinary relief.

## I. Factual and Procedural Background

On May 7, 2002, Petitioners presented a proposed plat of the planned Marmion Hill Subdivision to the Town Council.[3] The development is entirely within the city limits of Bolivar and provides for thirty-eight lots with thirty-six homes to be built on just over six acres of land. By necessity, the city's existing streets are required for ingress and egress to the proposed development.

Over the course of the past two years, the Town Council has required Petitioners to attend numerous Town Council meetings,[4] community impact assessment meetings, and "workshops" aimed at addressing issues related to the adequacy of the submitted plat. In connection with requests made by the Town Council, Petitioners have submitted additional documentation including a storm water management assessment and two traffic impact studies, as well as a letter from the state department of transportation stating that the planned development would not significantly increase the traffic load on the area's roads.

Petitioners were apprised by letter dated March 2, 2004, that the Town Council had voted against giving their approval to the plat depicting the Marmion Hill Subdivision. In explanation of the denial, three reasons were offered: (1) safety of pedestrians; (2) narrow streets ill-suited to a higher volume of traffic; and (3) limited access of emergency vehicles due to narrow roadways. As part of this same letter, the mayor indicated that the Town Council would be "likely" to approve the proposed development if the plat were resubmitted to reflect that residents of the development be required to use Columbia Avenue for ingress to the development.[5] The apparent reluctance on the part of the developers with regards to using Columbia Avenue [6] for ingress to Marmion Hill is due to the existence of a salvage yard that is along this particular route to the development.

Despite Petitioners' additional efforts for reconsideration of the Town Council's decision on the plat as submitted, the Town Council refused to place the matter on its agenda. By letter dated July 19, 2004, the Clerk of the County Commission of Jefferson County stated that "before this office may accept the plat for recordation, we will need affixed thereto an indication from the Municipality of Bolivar by and through its Town Council, that the subdivision has been approved, pursuant to their applicable ordinances."

Given their failure to obtain the Town Council's approval of the Marmion Subdivision development despite protracted efforts,[7] and convinced that a mandamus proceeding was their only remaining remedy, Petitioners filed a petition for a writ of mandamus with

---

3. Although the immediate plat that is the subject of this mandamus proceeding was submitted in May 2002, there were earlier actions related to the development of the proposed subdivision that began in August 1998 when Petitioner Brown first attempted to place the subject property on the market. That initial effort at development sparked the issuance of a nine-month moratorium on building permits, which led to this Court's ruling in *Bittinger v. Corporation of Bolivar*, 183 W.Va. 310, 395 S.E.2d 554 (1990), that the Town Council improperly issued the moratorium. When a second moratorium was issued by the Town Council in response to further development-related efforts, this Court ruled in *State ex rel. Brown v. Corporation of Bolivar*, 209 W.Va. 138, 544 S.E.2d 65 (2000), that the actions taken

by the Town Council to implement zoning restrictions were illegal.

4. Petitioners and/or their representatives attended 23 council meetings from May 2002 to May 2004.

5. There is no dispute with regard to the use of the streets identified in the plat for egress from the development.

6. Columbia Avenue, according to the Town Council, is sufficiently wide for two-way traffic and is amenable to improvement due to the low-density of housing that exists in that area.

7. *See supra* n. 3.

this Court on January 10, 2005. Through this extraordinary proceeding, Petitioners seek a directive requiring the Town Council to stamp the submitted plat for the development of Marmion Hill with the necessary designation of approval that will allow the Clerk of the Jefferson County Commission to record the same and permit them to proceed with their development plans.

## II. Standard of Review

 Our longstanding three-prong standard for issuing writs of mandamus was announced in syllabus point two of *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969):

> A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

Also applicable is this Court's holding in syllabus point four of *Walter v. Ritchie,* 156 W.Va. 98, 191 S.E.2d 275 (1972):

> Mandamus will lie to compel performance of a nondiscretionary duty of an administrative officer though another remedy exists, where it appears that the official, under misapprehension of the law, refuses to recognize the nature and scope of his duty and proceeds on the belief that he has discretion to do or not to do the thing demanded of him.

Accordingly, we proceed to determine whether there is a basis for issuing a writ of mandamus in this case.

## III. Discussion

Petitioners argue that the requisite clear legal right to the relief they are seeking is rooted in two decisions issued by this Court, both of which involve the Town Council's actions with regard to development-related matters. The first dispute arose in the context of a moratorium [8] that the Town Council issued in 1987 to forestall the issuance of any new building permits. Although the property involved in *Bittinger v. Corporation of Bolivar,* 183 W.Va. 310, 395 S.E.2d 554 (1990), was separate from that at issue here, Petitioners cite that decision as indicative of the Town Council's approach throughout this particular development matter and in general. In *Bittinger,* we noted that the Town Council's actions in issuing a moratorium on building permits while failing to repeal a valid ordinance which controlled the issuance of such permits was evidence of the Town Council's "cavalier attitude" with regard to complying with the governing laws. *Id.* at 314, 395 S.E.2d at 558.

Both the moratorium issued by the Town Council in March 1987 and an ordinance later adopted on July 14, 1987 (hereinafter referred to as the "1987 ordinance") were at issue in *Bittinger.* After first determining that the 1987 ordinance was a validly enacted building ordinance, as opposed to a zoning ordinance,[9] this Court addressed the issue of the moratorium. Given that municipalities have only those powers conferred upon them by statute or pursuant to their charter, we held in *Bittinger* that there was no existing authority that would allow the Town Council to issue a blanket moratorium and thereby defeat the operation of a valid ordinance. 183 W.Va. at 314, 395 S.E.2d at 558. Consequently, we held that the moratorium was improperly issued and reversed the lower court's decision to deny the writ of mandamus requested by the appellants in that case. In so ruling, we stated that "the appellants are entitled to have their applications for [building] permits which were submitted within that moratorium period considered under the ordinances existing at that time and granted, if the ordinances as written

8. The moratorium was originally for 90 days, but it was extended for an additional 60 days. *See Bittinger,* 183 W.Va. at 312, 395 S.E.2d at 556.

9. We explained the difference between zoning and building permits: "The distinguishing factor between the two types of permits is that a building permit involves how that use is undertaken while a zoning permit concerns whether a certain area may be used for a particular purpose." *Bittinger,* 183 W.Va. at 314, 395 S.E.2d at 558. Petitioners argue that the Town Council has been using the 1987 ordinance as a zoning ordinance when it is merely a building ordinance. Because that issue has no bearing on the matters before us, we do not address it further.

would permit." 183 W.Va. at 315, 395 S.E.2d at 559.

When Petitioner Brown initially sought to market the subject real estate,[10] she encountered difficulty in selling the property due to the nine-month moratorium imposed by the Town Council, which was purportedly imposed for the purpose of studying and evaluating the town's building and zoning ordinance. *See State ex rel. Brown v. Corporation of Bolivar* ("*Brown I* "), 209 W.Va. 138, 141, 544 S.E.2d 65, 68 (2000). In her efforts to proceed with the planned sale despite the moratorium, Petitioner Brown filed a petition for extraordinary relief and Petitioner Ashbaugh intervened in that proceeding based on his ownership of separate property located in Bolivar that he desired to develop. Just as in *Bittinger*, we determined in *Brown I* that the Town Council had imposed a moratorium that was "void as a matter of law." *Id.* at 142, 544 S.E.2d at 69. And, because our decision in *Bittinger* held in unmistakable terms that valid ordinances could not be suspended from operation by means of a moratorium,[11] this Court awarded attorney's fees and costs in *Brown I* for the Town Council's blatant disregard of a "clear directive of this Court." *Id.* at 144, 544 S.E.2d at 71.

In fashioning the relief awarded to the petitioners in *Brown I*, we referenced our holding in *Bittinger* which required that any submitted building permit applications were to be considered under the ordinance existing at the time the application was submitted, rather than pursuant to any subsequently enacted ordinances. Because Ms. Brown had not submitted a building permit to the Town Council before seeking relief in *Brown I*, our ruling in *Bittinger* concerning the remedy to be awarded for an improperly enacted moratorium was of no benefit to Petitioner

Brown. As this Court recognized in *Brown I*, the specific harm Petitioner Brown suffered due to the illegally imposed moratorium was in being effectively prevented from selling her property. As part of identifying the appropriate relief for this effective denial of sale, we adopted the approach taken by the United States Court of Appeals for the Tenth Circuit in which the court determined that the remedy for an improperly enacted ordinance was to permit "the property owner affected ... to use his property for any lawful purpose without regard to the void zoning ordinance." *Carter v. City of Salina*, 773 F.2d 251, 255 (10th Cir.1985). Applying the holding in *Carter* to the facts of *Brown I*, this Court ruled:

> [W]e find that equitable considerations dictate that Ms. Brown and her immediate purchasers and/or her immediate successors in title to the estate's property are entitled to develop and use the property for any lawful purpose as they might have done prior to the void moratorium and the now repealed zoning ordinance. Likewise, Mr. Ashbaugh was also effectively prevented from developing his property while the moratorium was in place, and he is also entitled to continue to develop his property without regard to the current zoning ordinance, as he might have done prior to the void moratorium and the now repealed zoning ordinance.[12]

209 W.Va. at 144, 544 S.E.2d at 71 (footnote added).

Based on the structure of this Court's award of relief to Petitioner Brown in *Brown I*, Petitioners posit that the 1987 ordinance is the controlling set of standards under which the building permit applications pertaining to the Marmion Hill development must be considered. Rather than being controlled by the 2000 planning and zoning ordinance in effect

---

**10.** She did this in her capacity as the executrix for the estate of Dixie D. Kilham in connection with her duty to discharge an obligation owed by the estate to the Internal Revenue Service.

**11.** We held in syllabus point three of *Bittinger* that "[i]n order to suspend the operation of an ordinance, the ordinance must be repealed or succeeded by another ordinance or an instrument of equal dignity." 183 W.Va. at 311, 395 S.E.2d at 555.

**12.** As of July 7, 2000, the Town Council passed a new planning and zoning ordinance. This 2000 ordinance is referred to as the current zoning ordinance. The reference to the "now repealed zoning ordinance" appears to be a zoning ordinance that was passed during the nine-month moratorium at issue in *Brown I*.

at the time the initial subdivision plat was submitted, Petitioners contend that the language of *Brown I*, which extends to the "immediate purchasers" and "immediate successors in title," governs their building permit applications. 209 W.Va. at 144, 544 S.E.2d at 71. While we agree that the 1987 ordinance is the applicable building ordinance for purposes of issuing building permits, there is separate authority that pertains to the initial and immediate concern presented by Petitioners—the approval of the subdivision plat.

Before any building permits can be issued relative to the Marmion Hill subdivision, there first must be a recording of the plat with the Jefferson County Commission. And, as the county commission has indicated, it cannot record the subdivision plat absent the seal of approval from the Town Council. The statute which governs the authority of the Town Council to approve subdivisions provides that:

> In case a proposed subdivision of any lot or parcel of land is situate within the corporate limits of any municipality, or abutting thereon, it shall be the duty of the owner, or owners, or his or their agent, to submit a plat or plan of such subdivision to the council or commissioners of such municipality, *showing the street and alley connections that such subdivision makes with such municipality, and furnishing full information for the purpose of determining whether the proposed subdivision will impede or prevent the further development and extension of such municipality where such subdivision is situate.* Before any such subdivision is finally laid out, it shall have the approval of the council or commissioners of the municipality wherein the subdivision is situate, or upon which it abuts, and such approval and the date thereof shall be indicated on the plat or plan of such subdivision before the same is finally filed in the office of the clerk of the county court [now county commission] and the county assessor's office.

W.Va.Code § 39–1–16 (1923) (Repl.Vol.2004) (emphasis supplied).[13]

In explanation of its decision to withhold approval of the Marmion Hill subdivision plat, the Town Council states that it has the right to regulate the direction of traffic in the municipality of Bolivar. For this authority, the Town Council refers to its charter which grants it the right to control all the avenues in Bolivar.[14] And, it further posits that Petitioners can readily gain approval of their proposed subdivision if they just alter the plat to reflect ingress on Columbia Avenue. This Court does not disagree with the Town Council's position that it has the authority to regulate the use of its streets and the traffic flow on such streets. It appears to us, however, that the Town Council wrongly asserts that authority as a basis for withholding its

---

13. We reject Petitioners' suggestion that the provisions of West Virginia Code § 39–1–16 were repealed by the enactment of article 8A. Those statutes, which took effect on June 11, 2004, provide for the permissive establishment of both county and municipal planning commissions for the purpose of land use planning. While those provisions provide for an alternative mechanism for the approval of subdivisions and other land development issues, the provisions of West Virginia Code § 39–1–16 remain in effect and are controlling where planning commissions have not been established. There is no question that West Virginia Code § 39–1–16 is the governing statute with regard to obtaining the requisite approval at issue here as there was no planning commission with controlling statutory authority for plat approval at the time the subject plat was submitted.

14. The Town Council also cites to West Virginia Code § 8–12–2 (1969) (Repl.Vol.2003), which is known as the "home rule" statute, to support its authority over the use of its roads and streets. That statute gives municipalities various powers including "[t]he acquisition, care, management and use of the city's streets, avenues, roads, alleys, ways and property." W.Va.Code § 8–12–2(a)(5). Despite its plenary grant of power to municipalities for designated matters, West Virginia Code § 8–8–2 makes clear that such grant cannot be in conflict with other laws of the state. Clearly, the governing statutory provision that pertains to the recordation requirement at issue here is found in West Virginia Code § 39–1–16. The "home rule" statute, insofar as it grants plenary power to municipalities for road acquisition and use, has no applicability to the approval and recording of a subdivision plat—matters that are solely governed by West Virginia Code § 39–1–16. Consequently, we reject without further discussion the Town Council's argument that the plenary power provisions of the "home rule" statute control unless this Court finds such statutes unconstitutional.

approval of the Marmion Hill subdivision plat.

■ Under the only statutory authority that governs the terms for the Town Council's consideration of a submitted subdivision plat, there are two essential bases upon which the Town Council is permitted to review a submitted plat. First, the plat is required to "show[ ] the street and alley connections that such subdivision makes with such municipality." W.Va.Code § 39–1–16. Second, the plat must contain "full information" to allow the Town Council to determine "whether the proposed subdivision will impede or prevent the further development and extension of such municipality where such subdivision is situate." *Id.*

In refusing to issue its stamp of approval to the Marmion Hill subdivision, the Town Council has not raised any contention that the submitted plat [15] fails to depict the street and alley connections. With regard to the second prong of the municipal approval statute, the record does not disclose that the Town Council has raised any valid concern that this development would "impede or prevent the further development" of the municipality of Bolivar. W.Va.Code § 39–1–16.[16] The only issue that the Town Council has voiced in explanation of its decision not to approve the development is traffic related; specifically, the need to limit the direction of traffic on certain streets. While the Town Council has the clear authority to control the use of its streets, that right is separate and distinct from the considerations at issue in the approval of a submitted subdivision plat under the authority of West Virginia Code § 39–1–16.

From the record submitted in this case, it appears to this Court that there is no legitimate basis—in law or in fact—for refusing to stamp the submitted plat for Marmion Hill with the seal of approval required for purposes of recording the plat with the Clerk of the Jefferson County Commission. Given that the record fails to disclose any information that the submitted plat is insufficient for

purposes of showing alley and street connections or that it presents legitimate concerns of impeding further development of Bolivar, we find no basis for the Town Council's continued refusal to issue the stamp or seal of approval necessary for Petitioners to proceed with this development.

We do not suggest that the Town Council is without means to remedy the traffic problems it is concerned with, only that those problems do not properly lie within the realm of the statutorily-delineated bases for withholding a stamp of approval on a submitted subdivision plat. *See* W.Va.Code § 39–1–16. Under its clear authority to provide for the use of its streets, the Town Council can determine that certain roadways can only be traversed in one direction and resolve the perceived traffic flow problem that it presents as the only impediment to gaining its approval of this development. Because we conclude that the Town Council is mistaken with regard to the scope of its reviewing authority under West Virginia Code § 39–1–16 in that it wrongly believes it has the discretion to withhold approval of the plat for reasons that do not fall within the considerations delineated in the approval statute, we grant a writ of mandamus, as moulded, to require the Town Council to place its designation of approval on the submitted plat. *See Walter,* 156 W.Va. at 99, 191 S.E.2d at 276, syl. pt. 4 (holding that mandamus lies to compel performance of nondiscretionary duty where administrative official misapprehends law, refuses to recognize nature and scope of his duty, and acts pursuant to belief that he has discretion to do or not do what is demanded).

■ While we had little difficulty in directing the Town Council to approve the submitted Marmion Hill plat for recordation purposes given the lack of proper bases for withholding such approval, we do not find that Petitioners' request to direct the Town Council to issue any and all required building permits is similarly the proper subject for a

---

15. Petitioners have submitted nine revised plats in their attempt to gain the approval of the Town Council for the Marmion Hill development.

16. During the oral argument of this matter, it was disclosed that the subdivision adjoins national park lands, which are not subject to development.

writ of mandamus. This is because there are multiple considerations that would clearly involve the discretion of the Town Council in determining whether any requested building permit can be issued. We do not suggest, however, that the Town Council can wrongly withhold the issuance of any building permit in the guise of standing in the way of development, only that such issue, due to its discretionary nature, would not be the proper subject of a writ of mandamus.

With regard to Petitioners' request for attorney's fees, we do not consider this case to be similar to the situation presented in *Brown I.* In that case, it was beyond dispute that the Town Council had ignored the rulings of this Court in *Bittinger* with regard to issuing moratoriums as a means of defeating the operation of valid ordinances. Here, we do not have facts that suggest that the Town Council has acted in defiance of clear previous directives issued by this Court. While Petitioners suggest that this Court all but said in *Brown I* that they were entitled to the necessary building permits and concomitant approval required to proceed with Marmion Hill, the rulings we issued in that case cannot be read in as broad a fashion as Petitioners maintain. Although *Brown I* contained directives that Petitioners were entitled to "develop and use the property for any lawful purpose" pursuant to the 1987 ordinance, that decision did not mandate that all necessary building permits were to be issued. 209 W.Va. at 144, 544 S.E.2d at 71. Critically, this Court's decision in *Brown I* did not dispense with the Town Council's discretion with regard to consideration of and issuance of building permits. It merely designated which ordinance would provide the governing standards for the issuance of such permits. As there is no contention that the Town Council attempted to apply any ordinance other than the 1987 ordinance to their building permits, there is no basis from which to argue that attorney's fees are warranted for the Town Council's failure to comply with our directives in *Brown I.*

■ This Court's decision to issue a writ of mandamus is pursuant to our previous recognition in *Walter* that mandamus can be properly used where a government official misapprehends the nature of his duty to act and wrongly refuses to perform an act based on an incorrect understanding of his statutory duty. 156 W.Va. at 99, 191 S.E.2d at 276, syl. pt. 4. In this case, the Town Council appears to read its obligation with regard to the factors it may consider when reviewing a submitted subdivision plat in a fashion more expansive than the clear terms of the statute permit. Due to the fact that West Virginia Code § 39–1–16 has never been interpreted by this Court, the Town Council's interpretation of the authority extended to it by that statute was not in clear disregard of specific judicial directives. Consequently, on the facts presented by this case we do not find an award of attorney's fees to be warranted based on the Town Council's incorrect interpretation of its statutory obligations as delineated in West Virginia Code § 39–1–16.

In summary, this Court is issuing a writ of mandamus for the limited purpose of directing the Town Council to approve the submitted plat depicting the Marmion Hill subdivision pursuant to the authority of West Virginia Code § 39–1–16. Following the recordation of that plat by the Jefferson County Commission, all building permits that are submitted for approval which pertain to the subdivision are to be reviewed pursuant to the standards set forth in the 1987 ordinance. That ordinance is the controlling building ordinance based on the rulings of this Court in *Brown I. See* 209 W.Va. at 144, 544 S.E.2d at 71. Those standards, rather than the ones now in force, are the governing standards pursuant to which building permits sought with respect to the Marmion Hill subdivision are to be reviewed.

Based on the foregoing, a writ of mandamus, as moulded, is issued for the purpose of requiring the Town Council of Bolivar to place its seal or stamp of approval on the plat submitted by Petitioners depicting the Marmion Hill subdivision.

Writ granted as moulded.