679 S.E.2d 573

**Paul L. ASHBAUGH and Ashbaugh Custom Builders, LLC, Plaintiffs Below, Appellants**

v.

**The CORPORATION OF BOLIVAR, a West Virginia Municipality, et al., Defendant Below, Appellee.**

**No. 33910.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2009.

Decided Feb. 6, 2009.

See also, 209 W.Va. 138, 544 S.E.2d 65.

Richard G. Gay, Nathan P. Cochran, Law Office of Richard G. Gay, Berkeley Springs, WV, for the Appellants.

Michael D. Lorensen, Johnna L. Faber, Bowles Rice McDavid Graff & Love, Martinsburg, WV, for the Appellee.

PER CURIAM.[1]

Paul L. Ashbaugh and Ashbaugh Custom Builders, LLC appeal from the August 10, 2007, order of the Circuit Court of Jefferson County granting summary judgment to the Corporation of Bolivar ("Bolivar") in a property development case. At issue below was whether the enactment of an ordinance by the Bolivar Town Council ("Town Council") that prevented the connection of privately constructed roads or streets to existing town roads, streets, and alleys was an improper attempt by the Town Council to frustrate Mr. Ashbaugh's development of the Marmion Hills subdivision. After reviewing the arguments presented on this issue, the trial court concluded that the ordinance was valid, given its appropriate municipal purpose of regulating traffic flow, and that Bolivar did not violate the directives of this Court in *State ex rel. Brown v. Corporation of Bolivar,* 217 W.Va. 72, 614 S.E.2d 719 (2005) (*Brown* II). Through this appeal, Mr. Ashbaugh seeks a determination that the ordinance at issue is invalid and a ruling that Bolivar is required to provide access to Clay Street for purposes of ingress and egress from the Marmion Hills development. Upon our careful review of this matter, we find that the circuit court committed no error and, accordingly, affirm the lower court's decision.

## I. Factual and Procedural Background

As we recognized in *Brown* II, this matter has a protracted history that dates back to 1998 when the former owner of the subject property initially attempted to place the land currently designated for the Marmion Hills development on the market. 217 W.Va. at 74, n. 3, 614 S.E.2d at 721, n. 3. Over the years, the Town Council has employed various means to forestall the development of the subject property including the issuance of a moratorium on building permits and the implementation of certain zoning restrictions, which were subsequently determined to be illegal. *See id.* at 74, n. 3, 614 S.E.2d at 721, n. 3; *see also State ex rel. Brown v. Corporation of Bolivar,* 209 W.Va. 138, 544 S.E.2d 65 (2000) (*Brown* I); *Bittinger v. Corporation of Bolivar,* 183 W.Va. 310, 395 S.E.2d 554 (1990). When this case was last before us in 2005, Mr. Ashbaugh was seeking extraordinary relief to secure the Town Council's performance of the purely ministerial act of stamping the plat depicting the Marmion Hills subdivision as approved.[2] While this Court found that Mr. Ashbaugh was entitled to a directive governing the stamping of the subdivision plat as approved, we did not grant the additional relief he sought with regard to ordering the Town Council to issue

---

1. Pursuant to administrative orders entered September 11, 2008, and January 1, 2009, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. Our decision to issue a writ of mandamus requiring that the Town Council stamp the submitted plat as approved in *Brown* II was impelled by the admitted lack of any statutory impediment to the plat's approval under West Virginia Code § 39-1-16 (1923) (Repl. Vol. 2004). By withholding that stamp of approval, the Town Council had prevented Mr. Ashbaugh from applying for and obtaining building permits for the Marmion Hills development. *See* 217 W.Va. at 77–78, 614 S.E.2d at 724–25.

the building permits he required to develop the subject property.[3]

Shortly after the issuance of *Brown* II, the Town Council approved the plat for the Marmion Hills development as directed by this Court.[4] At the same time the plat was approved, however, the Town Council initiated the first of three required readings of a new ordinance that provided as follows:

"905.01 Acceptance of Streets" is amended by adding "(a)" before the first paragraph, and adding two new paragraphs lettered (b) and (c) as follows:

(b) No town road, street or alley may be extended beyond their current paved or graveled boundaries, except paper streets, as approved by the town council.

(c) No privately constructed road, street or alley may connect with existing paved or graveled roads, streets or alleys, if the existing paved or graveled road, street or alley is in whole or in part less than 30 feet in width.[5]

The ordinance was unanimously approved by the Town Council during its October 6, 2005, meeting.

In response to the enactment of the subject ordinance, Mr. Ashbaugh instituted a civil action on November 4, 2005, through which he sought a declaratory judgment with regard to his right to access the town's streets based upon the Town Council's approval of the Marmion Hills plat and relief for alleged civil rights violations.[6] After motions for summary judgment were filed by both Bolivar and Mr. Ashbaugh, the circuit court issued its ruling on August 10, 2007, denying partial summary judgment to Mr.

Ashbaugh and granting summary judgment to Bolivar. It is from this ruling that Mr. Ashbaugh seeks relief from this Court.

## II. Standard of Review

■ Our review in this matter is plenary as we recognized in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994): "A circuit court's entry of summary judgment is reviewed *de novo*." In determining whether the lower court committed error in granting summary judgment, we examine whether there are any genuine issues of material fact and whether inquiry concerning those facts is necessary to clarify the application of the law. *See* Syl. Pt. 3, *Aetna Cas. & Surety Co. v. Federal Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). With these standards in mind, we proceed to determine whether the grant of summary judgment was proper under the facts of this case.

## III. Discussion

Relying on *Brown* II and the Town Council's subsequent approval of the Marmion Hills subdivision plat, Mr. Ashbaugh argues that he is entitled to access the streets depicted on the approved plat for purposes of ingress and egress to the development (Clay and Jackson).[7] Because the enactment of the ordinance at issue effectively denies him the use of Clay Street,[8] Appellant contends that Bolivar has failed to comply with this Court's express directives in *Brown* II. Moreover, Mr. Ashbaugh suggests that by requiring the Town Council's approval of the plat in *Brown* II, this Court was evidencing an intent that the Marmion Hills subdivision should advance to the construction phase.

---

3. As we explained in *Brown* II, the issuance of building permits was not the proper subject of a writ of mandamus given the discretionary nature of such decisions. 217 W.Va. at 78–79, 614 S.E.2d at 725–26.

4. The plat was approved at the July 5, 2005, meeting of the Town Council.

5. Because all of the town's streets are less than thirty feet in width, this provision affects all of the streets of Bolivar from being extended by means of connections to privately-constructed roads.

6. The civil rights violations asserted by Mr. Ashbaugh under 42 U.S.C. § 1983 are currently

pending before the federal district court based on successful removal proceedings. The state law causes of action predicated on entitlement to use of Bolivar's streets were remanded to the circuit court.

7. *See infra* n. 8.

8. Jackson Street, which is now called Taylor Street, was turned into a "green space" in 2000 before the approval of the plat in July 2005. Appellant does not appear to take issue with the lack of access to Jackson/Taylor Street, only Clay Street.

This Court's ruling in *Brown* II pertained to one issue: requiring the Town Council to approve the submitted plat for the Marmion Hills development based on the clear absence of any statutory impediments to such approval. 217 W.Va. at 79, 614 S.E.2d at 726. The basis upon which we predicated the issuance of a writ of mandamus in *Brown* II was the Town Council's mistaken view that it could withhold approval of a subdivision plat for reasons not included in the approval statute. *Id.* at 78, 614 S.E.2d at 725. The only impediment raised by the Town Council to the Marmion Hills development were issues related to traffic flow. *Id.* at 78, 614 S.E.2d at 725. While we recognized the authority of the Town Council to control the use of its streets, we explained in *Brown* II that traffic concerns were not a basis for withholding approval of a submitted subdivision plat under West Virginia Code § 39–1–16. 217 W.Va. at 77–78, 614 S.E.2d at 724–25.

In an attempt to bolster his position, Appellant not only seeks to expand this Court's ruling in *Brown* II but wrongly imputes an intent to our opinion that is nonexistent. While we directed the performance of what amounted to one nondiscretionary act in *Brown* II, Mr. Ashbaugh suggests that we would not have ordered the Town Council's approval of the plat absent an intention that Marmion Hills should proceed to the development phase.[9] In marked contrast to Appellant's contention,[10] our decision to issue the writ of mandamus was impelled solely by the parameters of the law without concern for whether development of the Marmion Hills subdivision should reach fruition.[11]

Just as Appellant wrongly seized on factual statements in *Brown* II as evidence of this

Court's intent,[12] he similarly looks to another mere recitation of fact to argue that the directives set forth in *Brown* II were violated by passage of the subject ordinance. Mr. Ashbaugh attempts to elevate the significance of the following statement in *Brown* II: "By necessity, the city's existing streets are required for ingress and egress to the proposed development." 217 W.Va. at 74, 614 S.E.2d at 721. Based on this factual statement and our direction concerning the plat's approval, Appellant argues that we impliedly required in *Brown* II that the streets, as depicted on the plat, were to be utilized by the residents of the development.

■ A careful reading of our opinion in *Brown* II demonstrates that this Court recognized the Town Council's "clear authority to provide for the use of its streets." 217 W.Va. at 78, 614 S.E.2d at 725. We acknowledged that "the Town Council can determine that certain roadways can only be traversed in one direction" for purposes of "resolv[ing] the perceived traffic flow problem." *Id.* at 78, 614 S.E.2d at 725. Contrary to Appellant's assertion, there was no correspondent recognition or obligation imposed by this Court on the Town Council to require Bolivar to maintain the status quo as regards the town's road system. As the trial court correctly observed: "Nothing in the West Virginia Supreme Court's decision in *Brown* II negated the Town's authority to control its streets." Rather than proscribing traffic-related changes relative to the submitted plat, our decision in *Brown* II arguably anticipated that the Town Council might take action with regard to issues involving traffic flow. *See* 217 W.Va. at 78, 614 S.E.2d at 725.

9. Appellant argues that the following factual recitation in *Brown* II indicates this Court's intent to promote development: "Through this extraordinary proceeding, Petitioners seek a directive requiring the Town Council to stamp the submitted plat for the development of Marmion Hill with the necessary designation of approval that will allow the Clerk of the Jefferson County Commission to record the same *and permit them to proceed with their development plans.*" 217 W.Va. at 75, 614 S.E.2d at 722 (emphasis supplied).

10. According to Appellant, "[i]t is clear from the direct content of this Court's *Brown* II decision

that the Court's intent in ordering Bolivar to approve Ashbaugh's subdivision plat was to force Bolivar to stand aside and allow Ashbaugh to legally develop his property...."

11. For Appellant to suggest, rhetorically or otherwise, that this Court intended that Marmion Hills be developed based upon a factual recognition in *Brown* II that building permits *could* be applied for once the approved subdivision plat was recorded is patently absurd. *See* 217 W.Va. at 77, 614 S.E.2d at 724.

12. *See supra* nn. 9, 11.

While Appellant seeks a ruling from this Court requiring that all streets, avenues, and roads designated on an approved and properly recorded subdivision plat must forever remain accessible and subject to use in the exact manner as depicted on the plat, we find no basis in the law for such a ruling. The Legislature has expressly delegated authority over issues of road use and maintenance to municipalities such as Bolivar. *See* W.Va.Code § 8–12–2(a)(5) (2007) (providing that municipalities have control over "acquisition, care, management and use of the city's streets, avenues, roads, alleys, ways and property"); W.Va.Code § 8–12–5(1) (2007) (granting municipal governing bodies "plenary power and authority" to "lay off, establish, construct, open, alter, curb, recurb, pave or repave and keep in good repair, or vacate, discontinue and close, streets, avenues, roads, alleys, ways sidewalks, drains and gutters, for the use of the public"); *see also Brouzas v. City of Morgantown*, 144 W.Va. 1, 106 S.E.2d 244 (1958) (upholding authority of municipality to adopt ordinance vacating portion of street under predecessor statute to W. Va.Code § 8–12–5(1)); *Barker v. City of Charleston*, 134 W.Va. 754, 760, 61 S.E.2d 743, 747 (1950) (recognizing statutory "power and authority" of municipality to vacate or close streets as "valid" under parallel language of predecessor statute to W. Va.Code § 8–12–5(1)). Implicit in the express legislative delegation of matters governing road use and access to municipalities is the continuing authority to address these areas as the respective municipalities see fit within the bounds of the law.

While Appellant does not deny the right of the Town Council to control over the streets of Bolivar, he argues that certain conditions must be met before a municipality can "permanently close" a street. Relying on cases decided in equity, he argues that the street in issue must be unused and that even then it can only be closed if there is a convenient alternative route. *See, e.g., Charleston Nat'l Bank v. Thomas*, 143 W.Va. 788, 794, 105 S.E.2d 184, 188 (1958) (denying equitable relief sought to reopen street based on lack of use and unimproved condition of street). A critical distinction overlooked by Mr. Ashbaugh is that rather than "permanently closing" Clay Street, the subject ordinance is aimed at preventing the connection of additional private streets to all existing city streets. Rather than being closed to the public, Clay Street continues to be open to the public for usage in the same manner that has taken place for years. While access to Clay Street has been denied to the future residents of Marmion Hills for purposes of ingress and egress, that street has not been "permanently closed." As a consequence, those cases relied upon by Appellant to argue that certain precedent conditions must be met before a road can be "closed" are inapposite.

Claiming that the true aim of the Town Council was to thwart his development plans, Appellant argues that the ordinance is clearly invalid under *Pence v. Bryant*, 54 W.Va. 263, 46 S.E. 275 (1903). In syllabus point seven of *Pence* we held that:

Whether the motives of a town council in vacating a street are proper cannot be judicially inquired into; but the aim and purpose of the vacation, and the end accomplished, may be considered in passing on its validity. If the purpose effected by it is within the power of the council, its act will be valid; otherwise not.

As evidence for his contention that the Town Council's purpose for enacting the ordinance was to forestall development of Marmion Hills, Mr. Ashbaugh points to the timing of when the ordinance was first presented and to the absence of language specifically addressing traffic in either the title of or the language of the ordinance. By its passage of this ordinance, he argues that Bolivar accomplished exactly what this Court admonished against in *Brown* II: "standing in the way of development." 217 W.Va. at 79, 614 S.E.2d at 726.[13]

---

**13.** This Court's statement, selectively quoted by Appellant, was expressly directed at the issuance of building permits since that issue had been included in the petitioner's request for extraordinary relief. In explanation of our refusal to include a directive requiring the issuance of building permits we stated: "We do not suggest, however, that the Town Council can wrongly withhold the issuance of any building permit in the guise of standing in the way of development,

In passing on the validity of the ordinance, the circuit court examined the evidence introduced below regarding the purpose of the municipal enactment at issue. The trial court found that after the initial reading of the ordinance

> the town council held a series of meetings involving input from Ashbaugh and residents of the Bolivar community with respect to the potential closing of Clay Street at or about the street's then terminus near the Marmion Hills property due to safety concerns. The town also considered previous input from local emergency services personnel regarding the inadequacy of Clay and Taylor Streets to accommodate emergency response vehicles and equipment.[14]

These traffic and safety-related issues were longstanding as the Town Council, through its mayor, had explained to Mr. Ashbaugh in a letter dated March 3, 2003, why approval for the subdivision plat was withheld:

> 1) Safety of pedestrians and in particular, the safety of small children present in significant numbers along the residential streets proposed to be used for ingress and egress to this subdivision; 2) Narrow streets that are ill-suited to the higher volumes of traffic that will be caused by the size of this subdivision ...[; and] 3) Narrow streets that, when coupled with residential parking along the sides of the street and two-way traffic, will impede access by fire and emergency vehicles.

Upon its review of the entirety of the evidence proffered on the Town Council's objective with regard to the subject ordinance, the trial court ruled that:

> 1) the record reflects that the motive of the Town in adopting the Ordinance was to regulate the flow of traffic in the town of Bolivar; 2) the town had the authority to adopt the Ordinance; and 3) the end accomplished was the more efficient regulation of traffic in the town of Bolivar for all of the residents of the town.

In ruling on the validity of the ordinance, the trial court addressed Appellant's contention that its passage effectively rendered the Town Council's approval of the plat meaningless. Of specific import to the trial court in rejecting this argument was the availability of two other streets for purposes of ingress and egress to the Marmion Hills development: Columbia Avenue and Paul Courtney Drive. While both of those roads appear on the approved subdivision plat, Appellant objects to using these alternate means of access based on development costs and aesthetics.[15] Bolivar maintains that it has made offers to assist Mr. Ashbaugh with both of these concerns.

Clearly, our decision in *Pence* requires that an ordinance that has as its purpose a valid municipal objective, such as limiting access to city streets for purposes of controlling traffic and promoting safety, must be upheld. Despite the fact that the ordinance was first raised when the Town Council approved the subdivision plat in accordance with directives from this Court, the record amply supports the trial court's determination that issues of safety and traffic flow were the genesis for the enactment. Given the trial court's conclusion that "more efficient regulation of traffic" was the end accomplished by the ordinance combined with the absence of any factual evidence demonstrating to the contrary, we are without any basis for finding the ordinance to be invalid. *See Pence*, 54 W.Va. at 264, 46 S.E. at 275, syl. pt. 7. Accordingly, we conclude that the trial court did not commit error in granting summary judgment to Bolivar.

---

only that such issue, due to its discretionary nature, would not be the proper subject of a writ of mandamus." 217 W.Va. at 79, 614 S.E.2d at 726.

**14.** As the trial court found: "[T]he Fire Chief of the Friendship Fire Company which provides fire fighting services to the Town advised the town council, via a letter dated December 6, 2002, that it was already difficult for fire trucks and other emergency equipment to access Clay and Jackson (now Taylor) Streets due to the narrowness of the streets coupled with the curbside parking, and that accessing Marmion Hill via Columbia Avenue would allow emergency equipment optimum mobility in case of an emergency."

**15.** Mr. Ashbaugh argues that Paul Courtney Drive is a dirt strip, in part, and that it meanders through a vehicle junkyard. As to Columbia Avenue, he argues that it is a state-owned road that lies outside the boundaries of Bolivar.

Based on the foregoing, the decision of the Circuit Court of Jefferson County is affirmed.

Affirmed.

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.