395 S.E.2d 554

**Steven L. BITTINGER and Douglas Alexander d/b/a Cornerstone Properties**

v.

**The CORPORATION OF BOLIVAR, a West Virginia Municipality, and the Bolivar Planning Commission.**

No. 19254.

Supreme Court of Appeals of West Virginia.

July 20, 1990.

Robert D. Aitcheson, Robert D. Aitcheson, L.C., Charles Town, for Steven L. Bittinger and Douglas Alexander.

Elizabeth F. Blake, Harpers Ferry, for The Corp. of Bolivar.

BROTHERTON, Justice:

This case involves an appeal from the November 3, 1988, order of the Jefferson County Circuit Court, which denied the petitioners' request for a writ of mandamus directing the respondent Corporation of Bolivar (Bolivar) to issue twenty building permits for construction within the corporate limits of Bolivar.

The petitioners, Bittinger and Alexander, are partners in Cornerstone Properties, which owns real estate comprising the Madison Park Subdivision. In the past, the petitioners have sought and obtained from Bolivar twelve building permits in connection with the Madison Park Subdivision.

In February, 1987, the mayor and members of the Bolivar town council discussed the growth and development of the municipality. At that time, the only restriction on the issuance of building permits was the requirement that the public service district and municipal water department permits first be obtained and that a $10.00 building permit fee be paid. Thereafter, on March

3, 1987, the Bolivar Town Council passed a resolution placing a ninety-day moratorium on the issuance of all building permits. On May 5, 1987, the petitioners appeared before the town council with the required sewer and water permits and requested twenty building permits for the project in Madison Park. The requests were denied based upon the moratorium.

On June 3, 1987, Bittinger appeared before the town council and requested twenty building permits. This request was also denied because the moratorium had been extended another sixty days by resolution of council at the same meeting.

At a special meeting held on July 14, 1987, the town council adopted an ordinance establishing a review process for construction within the Town of Bolivar. The council specified certain requirements that must be met in order to apply for and receive a building permit. The first reading of the ordinance was held at the town council regular meeting on July 7, 1987. No newspaper publication was performed.

Thereafter, the petitioners filed a petition for a writ of mandamus with the Circuit Court of Jefferson County, attempting to force the Town of Bolivar to issue the twenty building permits. The petitioners contended that the ordinance was invalid since it was a zoning ordinance rather than a municipal building ordinance as claimed by the city. If the ordinance was a zoning ordinance, the enactment would be invalid because the city did not follow the proper procedure for the enactment of a zoning ordinance.

On November 3, 1988, the Jefferson County Circuit Court ruled that the ordinance in question was a valid subsisting municipal building ordinance and thus, properly enacted. Judge Steptoe noted that generally, zoning ordinances related to the use to which a person may put their property, i.e., commercial or residential. By contrast, building ordinances go to the quality and quantity of the buildings which an owner may place on the property. Judge Steptoe also found that the ordinance was not a revenue-raising measure, since the building application permit fees remained at $10.00, although the permit fee for construction was changed from $5.00 per $1,000.00 up to $10,000.00 and $3.00 per $1,000.00 in excess of $10,000.00. Finally, Judge Steptoe noted that the ordinance had been read by title at not less than two meetings of the governing body of the city, with at least one week intervening between each meeting. Thus, the ordinance was adopted in conformity with West Virginia law.

The petitioners appeal, arguing that the ordinance in question is clearly a zoning ordinance and thus, is invalid.[1] For the reasons set out below, we hold that the ordinance in question is a valid building ordinance, but reverse on other grounds.

I.

The petitioners point to the introductory language of the ordinance as evidence in support of their position that it is a zoning ordinance:

WHEREAS the Municipality of Bolivar, West Virginia and its citizens are not subject to a comprehensive zoning plan and

WHEREAS there exists a necessity for review of proposed residential single and multiple unit site plans within the two; and

WHEREAS this process needs to be set forth in law to provide notice and due process as well as to provide for the health, safety and welfare of the citizens of Bolivar....

Specifically, the petitioners quote section 5(i) of the ordinance, which requires that each new construction project furnish documentation showing road access, amount of traffic that can reasonably be expected to be generated by the project, serviceability of existing roads, and traffic flow. This would include services by the fire depart-

---

1. The ordinance in question is entitled "An ordinance establishing the process by which proposed construction, demolition, renovation, remodeling and additions to buildings will be reviewed by the town council; providing for compliance and enforcement, defining the submittal and content requirements for building permits, use permits and permit fees."

ment, garbage pick-up, mail delivery, and other light and heavy delivery and moving vehicles. Thus, the petitioners contend that these requirements relate to the use of the area rather than the quality or quantity of the buildings.

A municipality derives its general authority to adopt a zoning ordinance from Chapter 8 of the West Virginia Code.[2] *Wolfe v. Forbes*, 159 W.Va. 34, 217 S.E.2d 899 (1975). West Virginia Code § 8–24–39 (1984), provides the municipality with the ability to create a zoning ordinance:

As an integral part of the planning of areas so that adequate light, air, convenience of access, and safety from fire, flood and other danger may be secured; that congestion in the public streets may be lessened or avoided; that the public health, safety, comfort, morals, convenience and general public welfare may be promoted; that the preservation of historic landmarks, sites, districts and buildings be promoted; and that the objective set forth in section one [§ 8–24–1] of this article may be further accomplished, the governing body of a municipality or a county commission shall have the following powers:

(a) To classify, regulate and limit the height, area, bulk and use of buildings hereafter to be erected;

(b) To regulate the height, area, bulk, exterior architectural features and use of buildings hereafter to be erected within designated historic districts;

(c) To regulate the alteration of exterior architectural features of buildings within historic districts and to regulate the alteration of historic landmarks and sites;

(d) To regulate and determine the area of front, rear and side yards, courts and other open spaces about such buildings;

(e) To regulate and determine the use and intensity of use of land and lot areas;

(f) To classify, regulate and restrict the location of trades, callings, industries, commercial enterprises and the lo-

cation of buildings designed for specified uses;

(g) To regulate and control, or prohibit in certain areas, junk yards, salvage yards, used parts yards, dumps or automobile or appliance graveyards, or the maintenance and operation of second-hand stores or outlets in residential areas;

(h) To classify and designate the rural lands among agricultural, industrial, commercial, residential and other uses and purposes; and

(i) To divide the municipality or county into districts of such kind, character, number, shape and area as may be deemed necessary to carry out the purposes of this section.

West Virginia Code §§ 8–12–13 & 14 (1964) also provide a town the power to "regulate the erection, construction, repair or alteration of structures of every kind ..." as well as to "require a permit as a condition precedent to the erection, construction, repair or alteration of any structure...." West Virginia Code § 8–12–16 (1990) provides the town with the power to regulate "the repair, alteration or improvement, or the vacating and closing or removal or demolition, or any combination thereof, of any dwellings or other buildings unfit for human habitation...."

In *Singer v. Davenport*, 164 W.Va. 665, 264 S.E.2d 637 (1980), this Court explained that "the purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development." *Id.* 164 W.Va. at 699, 264 S.E.2d at 640. Similarly, in syllabus point 1 of *Kaufman v. Planning & Zoning Commission, etc.*, 171 W.Va. 174, 298 S.E.2d 148 (1982), we ruled that "zoning is concerned with whether a certain area of a community may be used for a particular purpose while planning involves how that use is undertaken."

---

2. *See also* Note, *Modification of Zoning Ordinance Use Restrictions*, 78 W.Va.L.Rev. 522 (1976).

■ While perhaps confusing, both zoning regulations and planning or building regulations involve the use of a certain area of the community. The distinguishing factor between the two types of permits is that a building permit involves how that use is undertaken, while a zoning permit concerns whether a certain area may be used for a particular purpose. *Kaufman*, 171 W.Va. at 179, 298 S.E.2d at 153. In the case now before us, the ordinance in question relates to how the use of a certain area is undertaken and the quality and quantity of the buildings in question. While the ordinance does limit lot requirements and provide space restrictions, it also requires documentation of road access, traffic generation, traffic flow, and public services. After reviewing the ordinance in question, we cannot find that Judge Steptoe abused his discretion in finding that the ordinance was a building ordinance.

## II.

Although we believe the Circuit Court of Jefferson County was correct in holding that the ordinance in question was a building ordinance, we are disturbed by the cavalier attitude of the Bolivar Town Council in declaring a moratorium on a valid ordinance. After reviewing existing case law and the applicable statutes, we find no authority which would permit a town council to impose a blanket moratorium on a valid ordinance.

■ It has been well established that municipalities in West Virginia have no inherent power. Their authority is "expressly conferred upon them by the legislative department or clearly implied as an integral part of those granted by its charter or general statute. When doubtful, the power is to be denied and emergencies do not alter this principle." 13(b) Michies Jurisprudence, Municipal Corporations § 25.

Thus, under the police power provided by the State, the legislature has the power to provide for the protection and safety, health, morals, and general welfare of the public. This power may be delegated to the municipality created by the legislature. *See Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E.2d 616 (1985); *State ex rel. Bibb v. Chambers*, 138 W.Va. 701, 77 S.E.2d 297 (1953).

West Virginia Code § 8-11-4(d) provides that a governing body of a municipality may enact an ordinance without complying with the rules set out in the Code section only:

1. in the case of a pressing public emergency making procedure in accordance with the provisions of this section dangerous to the public health, safety or morals, and by affirmative vote of two-thirds of the members elected to the governing body, or

2. when otherwise provided in this Code. The nature of any such emergency shall be set out in full in the ordinance.

Nowhere in the appellee's brief do we find any allegation that there was an emergency situation, nor did the town council follow the procedures set out herein.[3]

■ In syllabus point 3 of *Hukle v. City of Huntington*, 134 W.Va. 249, 58 S.E.2d 780 (1950), this Court stated that "[g]enerally, the requirements of an ordinance governing procedure for the adoption of another ordinance cannot be waived, suspended or repealed by motion." The Court explained that:

> the ordinance of a municipal corporation may not be repealed by mere motion or resolution, nor can the operation of the ordinance be suspended by a resolution or by the acts of municipal officers.... A suspension, to be effective ... [must be] by an instrument of equal dignity, i.e. an ordinance.

The Bolivar charter provides that the Bolivar Town Council shall have the power "to promote the general welfare, prescribe and enforce ordinances for the health, safety, and welfare of its citizens, remove unsafe walls or buildings, control the construction and repair of all houses, and provide for the regular building of houses or other structures."

---

**3.** In *State ex rel. Casto v. Town of Ripley*, 95 W.Va. 521, 121 S.E. 725 (1924), *overruled on other grounds, State ex rel. Ammerman v. City of Phillipi*, 136 W.Va. 120, 65 S.E.2d 713 (1951), this Court found a building permit ordinance was void because it failed to specify rules and regulations. In the present case, the rules and regulations required are clearly defined.

*Id.* 134 W.Va. at 255–56, 58 S.E.2d at 784. In the case now before us, the town council did not enact a new ordinance to replace or improve upon the existing ordinance. Instead, the council merely sought to defer any additional permits for ninety days by declaring a "moratorium" on any applications. Thus, we find that the town council had no authority to suspend the valid ordinance and the moratorium is void.

The appellants point to a Virginia case in support of their position. In *Matthews v. Board of Zoning Appeals of Green County*, 218 Va. 270, 237 S.E.2d 128 (1977), the Virginia Supreme Court held that:

> In *Horne* we held that in the absence of express or implied authority under the enabling subdivision or zoning statutes, an ordinance imposing a temporary moratorium on the filing of site plans and preliminary subdivision plats pending completion of a new comprehensive plan and zoning ordinance was void.

*Id.* 237 S.E.2d at 133 (citing *Board of Supervisors v. Horne*, 216 Va. 113, 215 S.E.2d 453 (1975)). We agree with the position taken by the Virginia Supreme Court and hold that any act placing a temporary moratorium on the filing for permits under a valid ordinance was improper. Although we find that the ordinance was a valid building ordinance, we conclude the Bolivar Town Council improperly placed a moratorium on the existing regulations. In order to suspend operation of an ordinance, the ordinance must be repealed or succeeded by another ordinance or an instrument of equal dignity. Thus, the appellants are entitled to have their applications for permits which were submitted within that moratorium period considered under the ordinances existing at that time and granted, if the ordinances as written would permit.

Accordingly, this case is reversed and remanded for actions consistent with this opinion.

Reversed and remanded.