# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 21, 2010 Session

## SNPCO, INC. d/b/a SALVAGE UNLIMITED v. CITY OF JEFFERSON CITY, ET AL.

### Direct Appeal from the Circuit Court for Jefferson County
### No. 21,773    John D. McAfee, Judge

### No. E2009-02355-COA-R3-CV - FILED OCTOBER 29, 2010

The question before this Court is whether the grandfather clause of Tennessee Code Annotated section 13-7-208(b)(1) protects the owner of newly annexed city property from the enforcement of a citywide ordinance prohibiting the sale and storage of fireworks. Interpreting section 13-7-208(b)(1) strictly against the landowner, we hold that the grandfather clause does not apply because the ordinance is not a "zoning" restriction or regulation, i.e., the ordinance does not regulate the use of property within distinct districts or zones pursuant to a comprehensive zoning plan. Accepting the facts alleged in the landowner's amended complaint as true, the landowner is not entitled to an injunction prohibiting enforcement of the ordinance against its preexisting fireworks business. We accordingly affirm the dismissal of the landowner's amended complaint for failure to state a claim upon which relief may be granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J. and J. STEVEN STAFFORD, J., joined.

Carl R. Ogle, Jr., Jefferson City, Tennessee, for the appellant, SNPCO, Inc.

John T. Batson, Jr., Knoxville, Tennessee, for the appellees, City of Jefferson City, Mayor Darrell Helton, Vice Mayor Karen Smith, Councilwoman Ann Cole, Councilman Ray Cain, and Councilman Mark Potts.

**OPINION**

**I. Background and Procedural History**

The plaintiff/appellant, SNPCO Inc. d/b/a Salvage Unlimited ("SNPCO"), filed suit against the defendants/appellees, Jefferson City and various city officials ("the City"), following the annexation of a portion of SNPCO's property. SNPCO's amended complaint alleged in pertinent part: (1) SNPCO owned real estate located at 1139 Hwy 11 E., Talbott, Tennessee; (2) SNPCO developed and used the aforementioned property for commercial purposes, including the licensed storage and sale of fireworks; (3) SNPCO operated its lawful fireworks business for two years preceding annexation, making approximately $35,000 in yearly profit; (4) SNPCO purchased a large quantity of fireworks, which are currently stored on the premises, prior to annexation; (5) Jefferson City annexed a portion of SNPCO's property through Annexation Ordinance No. 2008-02, effective June 5, 2008; (6) the annexation of SNPCO's property carried with it the application of City Ordinance No. 2003-10 as found in the City Code at section 7-402, which prohibits the storage and sale of fireworks in Jefferson City; (7) SNPCO has repeatedly requested permission to continue its preexisting business of storing and selling fireworks, but that permission has been denied; and (8) the enforcement of City Ordinance No. 2003-10 against SNPCO's lawful, preexisting business would result in irreparable harm to SNPCO and cause a depreciation in the value of its property. The amended complaint consequently requested a permanent injunction precluding the enforcement of the "fireworks Code" against SNPCO's preexisting fireworks business or, in the alternative, monetary damages in the amount of $700,000 for the alleged taking of the business without compensation.

The City responded with a motion to dismiss the amended complaint for failure to state a claim upon which relief could be granted under Rule 12.02(6) of the Tennessee Rules of Civil Procedure. The City submitted that SNPCO was not entitled to the grandfather protection of Tennessee Code Annotated section 13-7-208(b)(1), which provides:

> In the event that a zoning change occurs in any land area where such land area was not previously covered by any zoning restrictions of any governmental agency of this state or its political subdivisions, or where such land area is covered by zoning restrictions of a governmental agency of this state or its political subdivisions, and such zoning restrictions differ from zoning restrictions imposed after the zoning change, then any industrial, commercial or business establishment in operation, permitted to operate under zoning regulations or exceptions thereto prior to the zoning change shall be allowed to continue in operation and be permitted; provided, that no change in the use of the land is undertaken by such industry or business.

Tenn. Code Ann. § 13-7-208 (b)(1) (Supp. 2010). The City argued that City Ordinance No. 2003-10 is not a zoning regulation and, thus, SNPCO is not permitted to sell fireworks in violation of its

prohibition.[1]  The City further argued that enforcement of City Ordinance No. 2003-10 did not amount to an unlawful taking under the controlling case law.

The trial court agreed with the City's position and granted its motion to dismiss after a hearing.  In view of the pleadings and the arguments of the parties, the court held as follows:

> (1) Plaintiff has failed to state a claim for which relief may be granted inasmuch as the Ordinances referred to in Plaintiff's Complaint do not constitute an "unlawful taking" as alleged by Plaintiff and (2) Plaintiff is not entitled to violate or otherwise fail to comply with City Ordinance No. 2003-10 found in City Code Section 7-402 under a theory of pre-existing nonconforming use pursuant to Tenn. Code Ann. § 13-7-208, as City Ordinance No. 2003-10 is not a zoning or land-use ordinance subject to grandfathering protection, but rather an exercise of police power.

SNPCO timely appealed.

## II.  Issue Presented

The sole issue on appeal, as we perceive it, is whether the grandfather clause of Tennessee Code Annotated section 13-7-208(b)(1) protects SNPCO against the enforcement of City Ordinance No. 2003-10 which allegedly prohibits the sale and storage of fireworks in Jefferson City.  The statement of the issues in SNPCO's principal appellate brief does not raise the question of whether the trial court erred when it held that SNPCO failed to state a claim for an unlawful taking; further,

---

[1]SNPCO did not specify in its amended complaint which provision of the Tennessee Code Annotated or Jefferson City Code provided the authority upon which to enjoin the enforcement of City Ordinance No. 2003-10.  Although not raised by the City, SNPCO's amended complaint violates Tennessee Rule of Civil Procedure 8.05, which provides:

> (1) Each averment of a pleading shall be simple, concise and direct. No technical forms of pleading or motions are required. Every pleading stating a claim or defense relying upon the violation of a statute shall, in a separate count or paragraph, either specifically refer to the statute or state all of the facts necessary to constitute such breach so that the other party can be duly apprised of the statutory violation charged.  The substance of any ordinance or regulation relied upon for claim or defense shall be stated in a separate count or paragraph and the ordinance or regulation shall be clearly identified. The manner in which violation of any statute, ordinance or regulation is claimed shall be set forth.

Tenn. R. Civ. P. 8.05(1).  The City nevertheless assumed in its response that SNPCO had intended to rely on the grandfather clause of Tennessee Code Annotated section 13-7-208(b)(1), which SNPCO subsequently presented as the authority in support of its position.  Importantly, SNPCO did not allege and has not argued on appeal that any separate provision in the Jefferson City Code provides a basis upon which to enjoin the enforcement of City Ordinance No. 2003-10.  Because the City has not argued that it failed to receive sufficient notice of SNPCO's intent to rely on section 13-7-208(b)(1) as the basis of its claim, we will address the applicability of section 13-7-208(b)(1) to the facts alleged in SNPCO's complaint.

SNPCO's principal brief does contain an argument supported by authority on the taking issue. This issue is therefore waived, even though SNPCO superficially addressed the taking question in its reply brief. *See Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) (citation omitted) (stating that an issue is waived if it is not raised in the statement of the issues, even if the issue is argued in the party's appellate brief).

## III. Standard of Review

A Rule 12.02(6) motion to dismiss seeks only to determine whether the pleadings state a claim upon which relief can be granted. Such a motion challenges the legal sufficiency of the complaint, not the strength of the Plaintiffs' proof. *See Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.*, 986 S.W.2d 550, 554 (Tenn. 1999). The motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997). In considering a motion to dismiss, the Court is required to take the relevant and material factual allegations in the complaint as true and to construe liberally all allegations in favor of the Plaintiffs. *Id.*; *Pursell v. First Am. Nat'l Bank*, 937 S.W.2d 838, 840 (Tenn. 1996); *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn. 1984). Additionally, this Court's review of a trial court's determinations on issues of law is *de novo*, without any presumption of correctness. *Frye v. Blue Ridge Neuroscience Ctr., P.C.*, 70 S.W.3d 710, 712 (Tenn. 2002); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

*Edwards v. Allen*, 216 S.W.3d 278, 284 (Tenn. 2007).

## IV. Analysis

Tennessee Code Annotated section 13-7-208(b)(1) is a "grandfather clause." *Smith Cnty. Reg'l Planning Com'n v. Hiwassee Vill. Mobile Home Park, LLC.*, 304 S.W.3d 302, 310 (Tenn. 2010) (citing *Lamar Tenn., LLC v. City of Hendersonville*, 171 S.W.3d 831, 835-36 (Tenn. Ct. App. 2005)). A grandfather clause is "'an exception to a restriction that allows all those already doing something to continue doing it, even if they would be stopped by the new restriction.'" *Lamar-Hendersonville*, 171 S.W.3d at 835-36 (quoting Black's Law Dictionary 629 (5th ed. 1979)). The legislative purpose of section 13-7-208(b)(1) is to protect preexisting businesses against the enforcement of later-enacted "zoning" laws that would exclude them. *See Outdoor W. of Tenn., Inc. v. City of Johnson City*, 39 S.W.3d 131, 137 (Tenn. Ct. App. 2000).

The General Assembly recognized that empowering local governments to enact *zoning ordinances* could result in hardship to existing property owners whose property was not previously covered by land use restrictions. These property owners could find themselves in violation of a newly enacted *zoning ordinance* simply

because the existing use of their property was inconsistent with the new restrictions. Rather than leaving the resolution of this problem entirely to the local governments, the General Assembly decided, as a matter of policy, that certain property owners should always be permitted to continue to use their property as they had been using it before the local land use restrictions took effect.

*421 Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, 36 S.W.3d 469, 476 (Tenn. Ct. App. 2000) (emphasis added). Accordingly, the plain language of section 13-7-208(b)(1) protects preexisting legitimate business operations from the enforcement of "subsequent changes in *zoning* restrictions. . . ." *Smith County*, 304 S.W.3d at 311 (emphasis added); *accord Lamar Tenn., LLC v. Metro. Bd. of Zoning Appeals*, 2010 WL 761290, at *8 (Tenn. Ct. App. Mar. 5, 2010), *perm. app. denied* (Tenn. Sept. 27, 2010) ("By its express terms, the statutory exception in Tenn. Code Ann. § 13-7-208 is limited to changes in 'zoning' restrictions or regulations.").

The party seeking the protection of section 13-7-208(b)(1) bears the burden of proving that its preexisting business qualifies. *Lamar-Hendersonville.*, 171 S.W.3d at 836 (citing Outdoor W. of Tenn., 39 S.W.3d at 135; *Coe v. City of Sevierville*, 21 S.W.3d 237, 243 (Tenn. Ct. App. 2000); *Lamar Adver. of Tenn., Inc. v. City of Knoxville*, 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995)). This burden is two-fold. First, the party seeking protection must establish "a change in zoning (either adoption of zoning where none existed previously, or an alteration in zoning restrictions)," *Lamar-Knoxville*, 905 S.W.2d at 176, which "must be significant 'insofar as plaintiff is concerned,'" *id.* at 177 (quoting *Rives v. City of Clarksville*, 618 S.W.2d 502, 506 (Tenn. Ct. App. 1981)). Second, the party seeking protection must demonstrate that "the use to which they put their land was permitted prior to the zoning change." *Id.* at 176.

The parties do not dispute whether City Ordinance No. 2003-10 restricts or regulates SNPCO's ability to continue its previously lawful fireworks business. Rather, the controlling question in this case is whether, as a matter of law, a regulation prohibiting the sale and storage of fireworks throughout Jefferson City is a "zoning" regulation or restriction such that the grandfather clause of section 13-7-208(b)(1) precludes enforcement of the ordinance against SNPCO's newly annexed property.

The Middle Section of this Court in *Lamar Tennessee, LLC v. Metropolitan Board of Zoning Appeals*, 2010 WL 761290 (Tenn. Ct. App. Mar. 5, 2010), *perm. app. denied* (Tenn. Sept. 27, 2010), recently faced a similar question. The Middle Section considered whether, as a matter of law, "regulations enacted as part of a plan for a redevelopment district are 'zoning' restrictions or regulations such that under the grandfather provisions of Tenn. Code Ann. § 13-7-208 the owner of a pre-existing non-conforming use in the redevelopment district is entitled to the benefits of the grandfather statute." *Lamar-Metro.*, 2010 WL 761290, at *1. The Middle Section primarily treated the question before it as one of statutory interpretation, summarizing the general principles governing its decision thus:

The primary rule of statutory construction is "to ascertain and give effect to the

intention and purpose of the legislature." *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 309 (Tenn. 2008); *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000). To determine legislative intent, one must look to the "natural and ordinary meaning" of the language used in the statute itself without "forced or subtle construction that would limit or extend the meaning of the language." *Walker*, 249 S.W.3d at 309; *Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000). We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).

Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975). Courts must presume that the General Assembly selected these words deliberately and that the use of these words conveys some intent and carries meaning and purpose. *Eastman Chemical Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004); *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984); *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990).

*Lamar-Metro.*, 2010 WL 761290, at *6.

The Middle Section went on to recognize, however, that a more specific rule guided its interpretation of section 13-7-208's grandfather provisions. *Id.* The Middle Section explained that, if the issue is whether a zoning provision applies to property in question, courts must resolve any ambiguity in favor of a landowner's unrestricted use. *Id.* (citing *State ex rel Morris v. Nashville*, 343 S.W.2d 847, 849 (Tenn. 1961); *421*, 36 S.W.3d at 475-76). But once a court determines that the restriction applies to the property in question, the issue of whether a grandfather clause in section 13-7-208 permits a landowner to continue a preexisting business requires a separate analysis. *Id.* In that instance, a court must strictly construe the language of the grandfather clause, which creates an exception to an otherwise valid regulation, against the landowner seeking its protection. *Id.*; *accord Smith County*, 304 S.W.3d at 310 (citation omitted). Applying this rule, the Middle Section concluded that a redevelopment plan instituted under the statutory provisions permitting local governments to redevelop blighted areas was not a zoning restriction or zoning regulation subject to the grandfather provisions of section 13-7-208. *Lamar-Metro.*, 2010 WL 761290, at *8. The same principles govern our decision in this case.

The dispositive question here is whether the enforcement of City Ordinance No. 2003-10 against SNPCO's newly annexed property amounts to the imposition of a "zoning" restriction or regulation giving rise to the grandfather protection of section 13-7-208(b)(1). Eugene McQuillin's influential treatise, The Law of Municipal Corporations, defines zoning as follows:

> "Zoning" has been defined as the legislative division of a community into areas in which only certain designated uses of land or structures are permitted. The term, ordinarily used with the connotation of comprehensive or general zoning, infers governmental regulation of the uses of land and buildings according to districts or defined areas. This regulation must and does utilize classification of uses within districts as well as classification of districts, inasmuch as it is impractical to deal specifically with each of the innumerable uses made of land and buildings. Accordingly, zoning has been described as the confining of certain classes of buildings and uses to certain localities, areas, districts, or zones, or the regulation of districts of building development and uses of property. The term "zoning" has acquired a technical and artificial meaning in accordance with the concepts of territorial divisions as related to uses.
>
> . . . .
>
> Comprehensive zoning is general zoning throughout a municipality according to a comprehensive plan to control and direct the use and development of property in the area by dividing it into districts according to present and potential uses. Thus, by comprehensive zoning an entire city is divided into districts or zones for the purpose of regulating and restricting the erection, alteration, repair and use of structures and land. In other words, zoning in its comprehensive sense means the creation of districts for different purposes and for different kinds of buildings, or the regulation by prescribed districts of the kinds of buildings to be erected, the proportion of the lot to be covered, and the uses to which both may be put within the districts. The term as commonly employed includes, therefore, location, height and the area of buildings, and use regulations of both land and buildings. Broadly speaking, zoning consists in setting apart the several sections of the city as industrial, mercantile and residential districts with each district restricted to the use designated.

8 Eugene McQuillin, *The Law of Municipal Corporations*, § 25:8 (3d ed., rev. vol. 2010); *accord* 83 Am. Jur. 2d *Zoning and Planning* § 3 (2003) ("'Zoning' is the division of land into distinct districts and the regulation of certain uses and developments within those districts."); 101A C.J.S. *Zoning and Land Planning* § 27 (2005) ("The authority to zone contemplates fixed areas with defined boundaries, and a zoning regulation should describe with certainty the district or districts within which particular restrictions are applicable.").

The above definition of zoning is consistent with Tennessee Code Annotated section 13-7-202, which states:

Whenever the planning commission of the municipality makes and certifies to the chief legislative body a zoning plan, including both the full text of a zoning ordinance *and the maps, representing the recommendations of the planning commission for the regulation by districts or zones* of the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the lot which may be occupied, the size of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes, and identify areas where there are inadequate or nonexistent publicly or privately owned and maintained services and facilities when the planning commission has determined the services are necessary in order for development to occur, *then the chief legislative body may exercise the powers granted and for the purposes mentioned in § 13-7-201, and may divide the municipality into districts or zones of such number, shape and areas it may determine, and, for such purposes, may regulate the erection, construction, reconstruction, alteration and uses of buildings and structures and the uses of land.*

Tenn. Code Ann. § 13-7-202 (Supp. 2010). It is also consistent with this Court's prior definition of zoning:

Zoning is "the division of a municipality or other local community into districts and the regulation of buildings and structures according to their construction and the nature and extent of their use, or the regulation of land according to its nature and uses. 'Zoning' has also been defined as the legislative division of a community into areas in each of which only certain designated uses of land are permitted so that the community may develop in an orderly manner in accordance with a comprehensive plan." 82 Am. Jur. 2d *Zoning and Planning* § 2 (1976).

*Robertson Cnty. v. Browning-Ferris Indus. of Tenn., Inc.*, 799 S.W.2d 662, 666 n.1 (Tenn. Ct. App. 1990); *accord Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000) (citing *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997) ("In the most general terms, zoning involves the territorial division of land into districts according to the character of the land and buildings, their suitability for particular purposes, and the uniformity of these uses."). These authorities demonstrate that zoning restrictions or regulations generally pertain to the regulation of land use within distinct districts or zones pursuant to a comprehensive zoning plan.

The exercise of a municipality's authority to enact a citywide ban of dangerous activities pursuant to its general police powers, on the other hand, is typically not considered an exercise of zoning power. *See* 101A C.J.S. *Zoning and Land Planning* §1 (2005) ("A zoning statute or ordinance is one which regulates the building development and uses of property, as opposed to regulating activity per se."); 83 Am. Jur. 2d *Zoning and Planning* § 3 (2003) ("Municipal ordinances that regulate in a general and uniform city- or town-wide manner, such as a building code, do not qualify as zoning. If a local ordinance applies to a particular activity wherever it is carried out in the

town and does not suspend or limit the zoning ordinance, it is not a zoning law merely because it touches the use of the land."). Rather, the legislative enactment of "a general, reasonable and uniform rule applicable to all similarly situated" pursuant to a municipality's general police power is commonly described as a "police ordinance."[2] *See* 6A Eugene McQuillin, *The Law of Municipal Corporations*, §§ 24:49, 24:53 (3d ed., rev. vol. 2010).

The City accordingly argues that a citywide ban against the storage and sale of fireworks in Jefferson City is not a zoning ordinance that imposes a zoning restriction or regulation against SNPCO's property for the purposes of section 13-7-208(b)(1); rather, it is a police ordinance that uniformly regulates dangerous activities. We agree. Although our supreme court has applied a much broader test when determining the nature of an ordinance for the purposes of adherence to statutory approval, notice, and hearing procedures, the unique nature of section 13-7-208(b)(1)'s grandfather clause persuades this Court that a more narrow definition of "zoning" should control our decision. Because the plain meaning of zoning pertains to the regulation of uses or activities within distinct districts or zones, a strict interpretation of section 13-7-208(b)(1) does not preclude the enforcement of an ordinance prohibiting the citywide sale and storage of fireworks. This type of ordinance is instead best characterized as a police ordinance for which the grandfather protection of section 13-7-208(b)(1) does not apply. *Cf. Smith v. Winchester City Council*, No. 01A01-9609-CV-00419, 1997 WL 92070, at *1, 3 (Tenn. Ct. App. Mar. 5, 1997) (holding that a similar city ordinance prohibiting the sale, display, or shooting of fireworks was not a zoning ordinance).

We disagree with SNPCO's suggestion that this Court should determine the meaning of zoning in section 13-7-208(b)(1) under the "substantially affects" analysis of *Cherokee Country*

---

[2]We agree with SNPCO's contention that the enactment of municipal zoning ordinances constitutes an exercise of the municipality's "police power." *See Smith Cnty.*, 304 S.W.3d at 310 (quoting *Family Golf*, 964 S.W.2d at 258) ("The state delegates the zoning power to local legislative bodies because that power 'is viewed as essentially a legislative exercise of the government's police power.'"). There is nonetheless a distinction between a "zoning" ordinance enacted pursuant to the municipal zoning authority and a "police" ordinance enacted pursuant to the separate grant of more general police power. *Compare* Tenn. Code Ann. § 13-7-201(a)(1) (Supp. 2010) (granting municipalities authority "in accordance with the conditions and the procedure specified in this part and part 3 of this chapter, to regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of the lot which may be occupied, the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes . . .), *with* Tenn. Code Ann. § 6-2-201(22) (Supp. 2010) (granting municipalities authority to "[d]efine, prohibit, abate, suppress, prevent and regulate all acts, practices, conduct, businesses, occupations, callings, trades, uses of property and all other things whatsoever detrimental, or liable to be detrimental, to the health, morals, comfort, safety, convenience or welfare of the inhabitants of the municipality, and exercise general police powers"). Our supreme court has acknowledged this distinction. *See Cherokee Country Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 471 (Tenn. 2004) (citations omitted) ("Notwithstanding the mandatory provisions on zoning, a municipality has the authority to enact regulations concerning the health, safety, and welfare of the community pursuant to its police powers without providing notice or hearings.").

*Club, Inc. v. City of Knoxville*, 152 S.W.3d 466 (Tenn. 2004). In that case, the Cherokee Country Club ("Cherokee") purchased property with the intent to demolish an unoccupied residence on the premises. *Cherokee*, 152 S.W.3d at 469. At the time of the purchase, the property was not part of a historic district and had not been proposed for inclusion in a historic district. *Id.* Later, however, the Mayor of Knoxville filed an application to re-zone the property at issue as a H-1 historic district, triggering the protection of an emergency demolition ordinance that prohibited the issuance of demolition permits for 180 days for "any property under review and consideration for an H-1 overlay or NC-1 overlay designation . . . ." *Id.* After the City of Knoxville building official relied on the emergency ordinance to deny Cherokee's request for a demolition permit, the country club filed suit arguing that the emergency ordinance was void because the City violated mandatory statutory procedures governing the enactment of zoning ordinances. *Id.*

The trial court granted Cherokee's motion for judgment on the pleadings. The court held that the City of Knoxville ("the City") had not enacted the emergency demolition ordinance in compliance with the statutory provisions that require approval, notice, and a public hearing prior to the enactment of a zoning ordinance and that the City had violated the statutory provisions that require planning approval, notice, and a public hearing for the creation and regulation of a historic district. *Id.* at 470. The trial court accordingly ordered the issuance of a writ of mandamus requiring the issuance of a demolition permit to the country club. *Id.* This Court reversed the decision of the trial court, holding in part that the emergency demolition ordinance was a building regulation that was not subject to the statutory provisions governing the enactment of zoning ordinances. *Id.* We further held that the statutory provisions requiring approval, notice, and a public hearing for the creation and regulation of an historic district were inapplicable because the emergency demolition ordinance did not concern an existing historic district. *Id.* The Tennessee Supreme Court granted Cherokee's application for permission to appeal.

The supreme court in *Cherokee* reversed this Court's decision, holding in pertinent part that the emergency demolition ordinance was a zoning ordinance enacted in violation of the notice, hearing, and review requirements of Tennessee Code Annotated section 13-7-201 *et seq. Id.* at 475. The supreme court acknowledged that "[t]he precise contours of determining when an ordinance is *a zoning ordinance, and thus subject to statutory zoning, however, requirements are difficult to draw or define.*" *Id.* at 472 (citations omitted) (emphasis added). After analyzing relevant case authorities and prominent treatises, the court determined that an ordinance is a zoning ordinance requiring adherence to statutory notice and hearing requirements if the ordinance "'substantially affects' the property owners' use of land." *Id.* at 473. The court explained that:

> This analysis avoids the difficulty of definitions found in some decisions by focusing on both the terms and the effect of an ordinance, as well as its "relation to the general plan of zoning." The analysis is also more comprehensive and more precise than simply attempting to distinguish whether the terms of an ordinance regulate the use of land or how the land is used. Finally, the analysis eliminates the risk that a municipality *may avoid statutory zoning requirements by attempting to label what is in reality a zoning ordinance as a building regulation.*

*Id.* (emphasis added) (footnote omitted) (citation omitted).

Applying the "substantially affects" test, the supreme court held that the emergency demolition ordinance was a zoning ordinance:

> This unusual emergency ordinance was permanently enacted to prohibit the issuance of demolition permits for a 180-day period for any property under consideration for re-designation as a historical district. The 180-day period was renewable by the City Council "as necessary" and, thus, could no doubt be extended indefinitely by the Council. Although not every regulation relating to demolition is a matter of zoning, the broad and permanent restrictions in this ordinance substantially affected Cherokee's use of its property and the manner in which Cherokee could effectuate any uses that remained permissible.

*Id.* at 473-74 (footnote omitted). The court added that its conclusion was consistent with Tennessee's statutory zoning provisions, which authorized "local governments and municipalities to regulate 'the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes.'" *Id.* at 474 (quoting Tenn. Code Ann. § 13-7-201(a)(1)). Under the "peculiar circumstances" of the case, *id.*, the supreme court reversed this Court's decision and reinstated the trial court's judgment, *id.* at 475.

At first glance, one might conclude that this Court should similarly apply the "substantially affects" test to decide whether City Ordinance No. 2003-10 imposes a zoning restriction or regulation against SNPCO's property for the purposes of section 13-7-208(b)(1). Courts often ascribe similar meanings to terms used within statutory provisions "relating to the same subject or having a common purpose." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). Indeed, the construction of an ambiguous term in one statutory provision may provide helpful guidance when resolving ambiguity in a related provision. *Lawrence Cnty. Educ. Ass'n v. Lawrence Cnty. Bd. of Educ.*, 244 S.W.3d 302, 309 (Tenn. 2007) (citation omitted). Because the term "zoning" as used throughout Tennessee Code Annotated section 13-7-201 *et seq.* generally relates to the same or similar subject, there is reason to interpret the term consistently throughout the statutory scheme. The grandfather clause of 13-7-208(b)(1) is distinguishable from its sister provisions, however, because it serves a unique purpose within the statutory scheme. Rather than regulate the exercise of municipal zoning authority, section 13-7-208(b)(1) provides an exception to otherwise validly enacted zoning restrictions—an exception we must construe strictly against the party seeking its protection. In our view, defining a zoning restriction or regulation under section 13-7-208(b)(1) as any restriction or regulation that "substantially affects" the landowner's commercial use of the property at issue would violate this principle. We therefore disagree that courts are bound to apply the "substantially affects" test when determining the breadth of 13-7-208(b)(1)'s grandfather protection.

Our review of *Cherokee* reveals that the supreme court confronted an entirely different question when it applied the "substantially affects" test. The court specifically dealt with how best

to decide when an ordinance is a zoning ordinance that requires adherence to statutory safeguards intended to balance municipal power with the interests of public citizens. *Cherokee*, 152 S.W.3d at 474-75. The court explained that this Court had determined the emergency demolition ordinance in *Cherokee* was a building regulation that did not require adherence to statutory zoning procedures in part under the reasoning of *Bittinger v. Corporation of Bolivar*, 395 S.E.2d 554 (W. Va. 1990). *Cherokee*, 152 S.W.3d at 473. In that case, the Supreme Court of Appeals of West Virginia had reasoned that the distinguishing feature between a "building" permit and "zoning" permit was "'that a building permit involves how that use is undertaken, while a zoning permit concerns whether a certain area may be used for a particular purpose.'" *Id.* at 473 (quoting *Bittinger*, 395 S.E.2d at 558). The Tennessee Supreme Court nevertheless rejected this Court's reliance on *Bittinger*, explaining that it preferred an analysis that was "more comprehensive and more precise than simply attempting to distinguish whether the terms of an ordinance regulate the use of land or how the land is used." *Id.*

The supreme court consequently examined several authorities addressing the precise question of how courts should decide the nature of an ordinance when determining the applicability of statutory approval, notice, and hearing requirements. The *Cherokee* court, for example, cited a prominent treatise addressing the applicability of statutory procedural requirements which concluded:

> "[w]here the particular restriction constitutes, or would constitute, a substantial interference with land use, the municipality ordinarily must treat it as a zoning regulation *and must follow statutory or character zoning procedures*, even though other authority for the particular type of ordinance has been granted."

*Cherokee*, 152 S.W.3d at 472 (quoting 1 Ziegler § 1.02(3)) (emphasis added)). The court also examined relevant case authority, with each case addressing whether an ordinance was the type of ordinance that required adherence to statutory zoning procedures. *See id*. at 472-73. The court explained, for example, that the North Carolina Court of Appeals in *Vulcan Materials Co., Inc. v. Iredell County,* 407 S.E.2d 283 (N.C. Ct. App. 1991), had invalidated an ordinance instituting a sixty-day moratorium on the issuance of building permits pending the consideration of a zoning plan:

> After observing that the ordinance "'had the effect of making the unzoned areas of the County subject to zoning restrictions prior to the adoption of a zoning ordinance applicable [in] those areas,'" the court concluded:
>
>> If an ordinance substantially affects land use, *it must be enacted under the procedures which govern zoning and rezoning*. To entirely prohibit a person from building upon his property even temporarily is a substantial restriction upon land use. Consequently, *it is not too much to ask that a municipality follow the same procedures with respect to notice and hearing before it puts such a moratorium into effect*.

*Cherokee*, 152 S.W.3d at 472-73 (citation omitted) (quoting *Vulcan*, 407 S.E.2d at 286) (emphasis added). Thus, the supreme court in *Cherokee* was particularly interested in adopting a test that would adequately provide procedural protection to public citizens and landowners prior to the adoption of an ordinance substantially affecting the use of land.

In this case, we are solely concerned with the question of whether an ordinance prohibiting the storage and sale of fireworks citywide qualifies as a zoning restriction for the purposes of section 13-7-208(b)(1). When defining "zoning restriction" as used in section 13-7-208(b)(1), we must interpret the term "zoning" strictly against SNPCO as the party seeking grandfather protection. Although this distinction between section 13-7-208(b)(1) and its sister provisions is narrow, it is paramount. If the question in this case was whether the City enacted City Ordinance No. 2003-10 in violation of statutory zoning procedures, the "substantially affects" test of *Cherokee* would control. *Cherokee*, however, does not require an analogous interpretation of the grandfather clause at issue in this appeal. We therefore hold that the proper definition of "zoning" for the purposes of section 13-7-208(b)(1) requires a narrow construction of that term's plain meaning, i.e., a "zoning" regulation or restriction is one that regulates or restricts the use of property within distinct districts or zones pursuant to a zoning plan.[3] *But see Metro. Gov't of Nashville and Davidson Cnty. v. Buchanan*, No. M2004-01716-COA-R3-CV, 2006 WL 249512, at *4-8 (Tenn. Ct. App. Feb. 1, 2006) (applying the "substantially affects" test to determine whether a metropolitan ordinance was a "public health, safety, and welfare" ordinance or a "zoning" ordinance for purposes of section 13-7-208(b)(1)'s grandfather protection). Under the alleged facts, City Ordinance No. 2003-10 does not fall within this narrow definition.

The Tennessee Supreme Court's recent decision in *Smith County Regional Planning Commission v. Hiwassee Village Mobile Home Park, LLC.*, 304 S.W.3d 302 (Tenn. 2010), does not require a contrary conclusion. *Smith County* concerned the application of section 13-7-208(b)(1) to a private act making it "'unlawful for any person to place or maintain three (3) or more mobile homes for living or sleeping purposes on any premises or tract of land in Smith County' outside specified municipalities without a permit." *Smith County*, 304 S.W.3d at 305. The parties in *Smith County*, however, did not dispute whether the private act amounted to a zoning change that imposed new zoning restrictions or zoning regulations and the court did not analyze the question in its

---

[3]It is not clear how much emphasis the supreme court in *Cherokee* intended courts to place on an ordinance's "relation to the general plan of zoning" when applying the "substantially affects" test. *Cherokee* appears to place the predominant focus on the effect of the restriction on the property in question. This Court in *Metropolitan Government of Nashville and Davidson County v. Buchanan*, No. M2004-01716-COA-R3-CV, 2006 WL 249512 (Tenn. Ct. App. Feb. 1, 2006), did not expressly consider the relation of Metropolitan Government of Nashville and Davidson County, Tennessee, Code § 16.24.330(B) to the applicable zoning plan when applying the "substantially affects" test. *See Buchanan*, 2006 WL 249512, at *4-7. If, however, a restriction that substantially affects one's use of property must also relate to the general plan of zoning, it is possible that a court could find that City Ordinance No. 2003-10 is not a zoning ordinance under the "substantially affects" test of *Cherokee*. We nonetheless express no opinion on this issue, nor do we address whether such an analysis would require evidence detailing the relationship between City Ordinance No. 2003-10 and Jefferson City's general plan of zoning.

opinion.[4] Further, the court recognized that "'[a] grandfather clause exception in a statute must be construed strictly against the party who seeks to come within the exception.'" *Id.* at 310 (quoting *Lamar-Hendersonville*, 171 S.W.3d at 835-36). We consequently reject SNPCO's contention that *Smith County* supports its position.

We acknowledge that the annexation of SNPCO's property and the resulting application of City Ordinance No. 2003-10 effectively changes the legal uses to which the property may be put and is therefore tantamount to a zoning change. *See Lamar-Metro.*, 2010 WL 761290, at *8. The grandfather clause of section 13-7-208(b)(1), however, must be strictly construed against SNPCO. *Id.* Section 13-7-208(b)(1) permits exceptions to zoning restrictions but not to police ordinances that are tantamount to zoning. *Cf. id.* The annexation of SNPCO's property and consequent enforcement of a citywide prohibition of the storage and sale of fireworks does not subject the property to a new zoning restriction or regulation under section 13-7-208(b)(1). *See id.* Broadly interpreting section 13-7-208(b)(1) "to create exceptions to anything other than zoning restrictions would be in contravention of its plain terms and in contravention of our obligation to construe the statute strictly." *Id.* If the legislature had intended to create an exception to the enforcement of police ordinances against newly annexed property, it could have done so explicitly. *See id.* Because no such exception exists, we affirm the decision of the trial court.

## V. Conclusion

For the foregoing reasons, we affirm the dismissal of SNPCO's amended complaint for failure to state a claim upon which relief could be granted. Costs of this appeal are taxed to the appellant, SNPCO, and its surety for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE

---

[4]Smith County conceded in its brief that a "change in zoning" had occurred and defended its position on other grounds. *Smith Cnty. Reg'l Planning Com'n v. Hiwassee Vill. Mobile Home Park, LLC.*, 304 S.W.3d 302 (Tenn. 2010) (No. M2007-02048-SC-R11-CV), 2009 WL 2003046, at *15-16.